**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**NATHANIEL CAULEY**                                                                                   **PLAINTIFF**

**V.**                                                          **CIVIL ACTION NO. 1:10-CV-26-KS-**
**MTP**

**SABIC INNOVATIVE PLASTICS, U.S., L.L.C., et al.**                              **DEFENDANTS**

## Memorandum Opinion and Order

For the reasons stated below, the Court **grants** Defendants' Motion for Summary Judgment

[148]. Accordingly, Defendants' Motions [140, 142] to strike Plaintiff's designation of Brian Van

Den Breen and exclude his proposed expert testimony are **moot**.

## I. Background

This is a product liability action. Plaintiff was walking down a set of stairs at Northrop

Grumman Shipbuilding when he slipped and fell, injuring his back. He alleges that his fall was

caused by a defective step cover designed, manufactured, distributed, sold, and/or fabricated by the

Defendants. Plaintiff brought the present product liability action, proceeding under design defect,

manufacturing defect, and failure-to-warn theories of liability. Plaintiff also brought a breach of

warranty claim. He requests $20,000,000.00 in actual damages, plus ten times that amount in

punitive damages.

## II. Motion for Summary Judgment [148]

Sabic filed a Motion for Summary Judgment [148], and Piedmont joined in the motion [150].

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## A.    *General Tort Claims*

Plaintiff asserted multiple claims in his Third Amended Complaint: negligence; strict product liability and product liability; gross negligence; failure to contain adequate warning and instructions; breach of warranty; and "alternative liability." The Mississippi Products Liability Act ("MPLA")[1] states that it is applicable to "any action for damages caused by a product except for commercial

---

[1]MISS. CODE ANN. § 11-1-63.

damage to the product itself." Miss. Code Ann. § 11-1-63. Accordingly, this Court has previously held "that the weight of the case law suggests that while negligence claims can be brought alongside strict liability claims, the findings for the claims brought under the MPLA can be dispositive as to the product-based negligence claims such as negligent failure to warn and negligent design." *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 846 (S.D. Miss. 2010).

This is a products liability action, and all of Plaintiff's claims should be addressed under the rubric laid out in the MPLA. Therefore, liberally construing the Third Amended Complaint, Plaintiff presented a design defect claim, a manufacturing defect claim, a warning defect claim, and a breach of warranty claim.[2] To whatever extent Plaintiff plead other general tort claims, the Court's judgment as to the MPLA claims shall be dispositive as to them. *Id.*

**B.   MPLA Claims, Generally**

Defendants presented a wide variety of arguments in support of their motion for summary judgment as to Plaintiff's MPLA claims, but it is not necessary for the Court to address all of them. Indeed, all of Plaintiff's MPLA claims fail for one simple reason: Plaintiff has not presented any evidence that Defendants manufactured, designed, or sold the specific step cover which allegedly caused his injury. To make out a claim under the MPLA, a plaintiff must "prove by the preponderance of the evidence that at the time the product left the control of the manufacturer . . . [t]he product was designed in a defective manner;" that "[t]he defective condition rendered the

---

[2]The Court emphasizes the liberality with which it is construing Plaintiff's Third Amended Complaint. According to the briefing on Defendants' Motion for Summary Judgment, Plaintiff's entire case is premised upon the theory that the step cover which allegedly caused his injury was made from the wrong material. That argument pertains to the design of the product at issue, making this, at its core, a design defect case – not a manufacturing or warning defect case. Nonetheless, Plaintiff plead multiple theories of liability, and the Court shall address each of them.

product unreasonably dangerous to the consumer;" and that "[t]he defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought." MISS. CODE ANN. § 11-1-63(a)(i)-(iii). The language pertinent to the present issue is the statute's implicit requirement that the product at issue in a case have been in the "control of the manufacturer . . ." at some point in time prior to the plaintiff's injury. *Id.*

In his Third Amended Complaint, Plaintiff alleged that all three Defendants designed, manufactured, and sold the specific step cover which caused his injury. However, he specifically testified that he did not know who manufactured the step cover, and that there were no identifying markings on it. Additionally, Plaintiff requested, via subpoena, Northrop Grumman's records related to the purchase of plastic step covers from the period of time surrounding his accident. In response, Northrop Grumman stated that "the step-covers at issue are 'common inventory' items that are not purchased for any particular customer contract; rather, they are purchased in bulk, warehoused and dispensed from inventory as needed." Northrop Grumman further responded that it has purchased step-covers from G E Polymershapes and Piedmont Plastics from January 1, 2004, to present. However, it affirmatively stated that it was "not possible to determine which vendor's product was involved [] in the December 3, 2007 accident involving [Plaintiff]."

It appears to be undisputed that Sabic manufactures plastic step covers like the one at issue and sells them to Northrop Grumman. Sabic produced a copy of one of its typical purchase orders from Northrop Grumman, and its 30(b)(6) representative explained the process by which Northrop Grumman orders the step covers. However, Sabic denied that it manufactured the specific step cover which allegedly caused Plaintiff's injury, and it was not among the vendors listed by Northrop Grumman in response to Plaintiff's subpoena. As such, it is incumbent upon Plaintiff to prove that

4

the step cover which allegedly caused his injury was actually manufactured by Sabic. He has not presented any evidence to that effect.

As for Piedmont, the record contains evidence that Piedmont sold step covers to Plaintiff – Northrop Grumman's response to Plaintiff's subpoena – but there is no evidence linking Piedmont to the specific step cover which allegedly caused Plaintiff's injury. According to Northrop Grumman, the step cover could have come from either Piedmont or a company which is not even a party in this matter.

Plaintiff argues that he does not have to prove that the particular step cover which allegedly caused his injury was defective because he alleges that all of the step covers manufactured by the Defendants were defective. Even if it were undisputed that every step cover manufactured by the Defendants were defective, Plaintiff would still be required to present some evidence that the step cover which caused his injury *was one of those defective step covers* manufactured by the Defendants. The bottom line is that the record contains evidence that the step cover could have come from Sabic, Piedmont, G E Polymershapes, or some other company that is not party to this matter. Defendants denied that they manufactured the step cover upon which Plaintiff slipped. Plaintiff must initially prove that the specific product which allegedly caused his injury was, at some point, within the control of one of the Defendants. *Id.* Plaintiff has not presented any evidence to that effect. Therefore, all of his MPLA claims fail for that reason alone. Regardless of this issue, Plaintiff has failed to present sufficient evidence to support each of the individual claims he presented, as the Court shall presently explain.

## C.    *Design Defect*

Plaintiff has not presented sufficient evidence to meet the MPLA's particular requirements

for design defect claims. The MPLA provides:

> [T]he manufacturer . . . shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer . . . :
>
> . . .
>
> (ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

MISS. CODE ANN. § 11-1-63(f). Plaintiff has not presented any evidence regarding a "feasible alternative design," as required by the MPLA. *Id.* Accordingly, even if Plaintiff had presented evidence that one of the Defendants manufactured, designed, or sold the particular step cover which allegedly caused his injury, his design defect claim would still fail.

Furthermore, it appears to be undisputed that the Defendants did not design the step cover at issue. Sabic's 30(b)(6) representative specifically testified that Northrop Grumman specifies the material and thickness of the step covers. Plaintiff's entire case is built upon the argument that the step covers should have been made out of a different material, but the evidence is clear that Northrop Grumman selected the material used in manufacturing the step covers.

## D.    *Manufacturing Defect*

The Court further finds that Plaintiff has not presented sufficient evidence to meet the MPLA's particular requirements for manufacturing defect claims. The MPLA provides that a manufacturer of a product shall not be liable if the plaintiff does not prove that "[t]he product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications . . . ." MISS. CODE

ANN. § 11-1-63(a)(i)(1). Plaintiff has not presented any evidence that the particular step cover which allegedly caused his injury deviated from the manufacturer's specifications or from other units manufactured according to the same specifications. Indeed, Plaintiff specifically testified that the step cover which allegedly caused his injury was the same as every other step cover he observed at Northrop Grumman. Accordingly, even if Plaintiff had presented evidence that one of the Defendant's manufactured, designed, or sold the particular step cover which allegedly caused his injury, his manufacturing defect claim would still fail.

### E.    *Warning Defect*

The Court also finds that Plaintiff has not presented sufficient evidence to meet the MPLA's particular requirements for warning defect claims. The Mississippi Supreme Court has noted:

> [I]n a failure-to-warn case, plaintiff must prove that the alleged defective warnings rendered the product unreasonably dangerous to the user or consumer; and that this condition proximately caused the damages for which recovery is sought. A key element of causation for a failure-to-warn claim is proof of a causal link between the plaintiff's injuries and the product's allegedly lacking a warning or having an inadequate warning. In other words, the failure to warn must be the proximate cause of the injuries suffered or it is irrelevant.

*3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005) (citations omitted). A plaintiff must "demonstrate that some other warning would have given them additional information that they did not already know and that they would have acted upon that new information in a manner that would have avoided the injuries." *Id.* Plaintiff has not presented any evidence that the step cover's lack of a warning caused his injury. Furthermore, Plaintiff has not presented evidence regarding an adequate warning that would have caused him to alter his behavior and, therefore, avoid injury. Accordingly, even if Plaintiff had presented evidence that one of the Defendants manufactured, designed, or sold the particular step cover which allegedly caused his injury, his warning defect claim would still fail.

**F.  *Breach of an Express Warranty***

Plaintiff also asserted a breach of warranty claim. The Third Amended Complaint is less than clear as to which type of warranty he alleges that Defendants breached. The Court will assume that Plaintiff intended to plead claims for the breach of an express warranty and the breach of implied warranties of merchantibility and fitness for a particular purpose. The Court will first address the express warranty claim.

The MPLA addresses breaches of express warranties. MISS. CODE ANN. 11-1-63(a)(i)(4). Accordingly, Plaintiff's claim for breach of an express warranty fails for the same reason noted above: his failure to present any evidence that one of the Defendants manufactured, designed, or sold the particular step cover which allegedly caused his injury. Alternatively, the Court finds that Plaintiff failed to present any evidence that Defendants made an express representation to him about the step cover, or that he relied on such information. *See McSwain*, 689 F. Supp. 2d at 848.

**G.  *Breach of Implied Warranties of Merchantibility and Fitness for a Particular Purpose***

The MPLA did not abrogate the common law tort claims for breach of implied warranties of merchantibility and fitness for a particular purpose. *Id.* at 849; *Bennett v. Madakasira*, 821 So. 2d 794, 808 (Miss. 2002). A plaintiff must prove the following elements to recover on a claim for breach of an implied warranty of merchantibility and fitness for a particular purpose:

> (1) That a "merchant" sold "goods," and he was a merchant with respect to "goods of the kind" involved in the transaction, (2) which were not merchantable at the time of sale, and (3) injuries and damages to the plaintiff or his property, (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury.

*Watson Quality Ford, Inc. v. Casanova*, 999 So. 2d 830, 834 (Miss. 2008). The fifth element of the claim can be described as offering "the seller an opportunity to cure." *McSwain*, 689 F. Supp. 2d at

849. Plaintiff has not presented any evidence that he provided notice of his injury to the seller of the step cover. Furthermore, he has not presented evidence that any one of the Defendants sold the particular step cover which caused his injury. Accordingly, his claim for breach of an implied warranty fails.

### III. CONCLUSION

For the reasons stated above, the Court **grants** the Motion for Summary Judgment [148] filed by Defendant Sabic Innovative Plastics US, L.L.C. and joined by Defendant Piedmont Plastics, Inc. as to all of Plaintiff's claims against them. This opinion and order do not, however, address Plaintiff's claims as to Defendant Sunset Fabrication, Inc., which was not a party to the underlying Motion for Summary Judgment [148].

Defendants' Motions to Strike [140, 142] Plaintiff's designation of Brian Van Den Breen and exclude his proposed expert testimony are **moot.**

SO ORDERED AND ADJUDGED this 23rd day of January, 2012.

s/Keith Starrett
UNITED STATES DISTRICT JUDGE